UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| R. PEACHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03139-TWP-DLP |
| | ) | |
| D. REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

In the summer of 2020, Robert Peacher was disciplined following his interaction with a member of the medical staff at Pendleton Correctional Facility (PCF). Mr. Peacher characterizes the interaction as innocent horseplay, but the prison staff found he violated the Disciplinary Code.

In his petition for a writ of habeas corpus, Mr. Peacher challenges his conviction and sanctions in disciplinary case ISR 20-06-0071. In this entry, the Court resolves one preliminary motion, denies Mr. Peacher's petition, and directs that this action be dismissed and judgment entered in the respondent's favor.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. Motion to Correct Mislabeled Exhibits

Mr. Peacher filed a reply brief with several exhibits. Dkt. 14 *et seq*. He later filed a motion notifying the Court that all his exhibits were docketed, but they were not separated or labeled on the docket in the manner he intended. Mr. Peacher's motion to correct mislabeled exhibits, dkt. [15], is **granted** insofar as the Court has reviewed the documents submitted with Mr. Peacher's reply. Their labeling has no effect on that review or the documents' evidentiary value. In all other respects, the motion is **denied**.

## III. The Disciplinary Proceeding

In ISR 20-06-0071, Mr. Peacher was convicted of interfering with a staff member after he blocked a door to the infirmary and prevented a nurse from entering. The incident is captured in an eleven-minute video. Dkt. 13. It does not include any sound.

The video is captured from inside the PCF infirmary, and the camera faces the door. A hallway to the right leads off the screen to, presumably, another part of the infirmary. The video shows the following:

- 4:21:30: Nurse Plasterer walks to the infirmary door, opens it, and continues to hold it slightly open. Mr. Peacher is visible through the opening.

- 4:21:50: Nurse Plasterer steps just inside the infirmary door and leans against a counter. Mr. Peacher stands in the doorway, holding the door slightly open. Nurse Plasterer converses with Mr. Peacher for nearly five minutes and laughs several times.

- 4:26:33: A second inmate enters the infirmary and walks off camera down the hallway. Nurse Plasterer continues to converse with Mr. Peacher.

- 4:27:01: Nurse Plasterer walks off camera down the hallway. Mr. Peacher continues to stand in the doorway, holding the door open.

- 4:27:33: Nurse Alyssa appears from the hallway to the right of the screen. Mr. Peacher steps inside the infirmary and closes the door. Nurse Alyssa straps something on Mr. Peacher's right wrist and converses with him near the counter.

- 4:27:52: Nurse Plasterer appears from the hallway and walks out the door, followed by another inmate. Nurse Alyssa and Mr. Peacher continue their conversation.

- 4:28:17: Nurse Alyssa removes the strap from Mr. Peacher's wrist. They continue their conversation.

- 4:28:46: Nurse Alyssa walks down the hallway, and Mr. Peacher leaves the infirmary through the door.

- 4:28:55: An inmate in a blue shirt appears from the hallway and leaves the infirmary through the door. Nurse Alyssa follows, opens the door, and holds the door open as she speaks with an inmate standing in the hallway.

- 4:29:37: Nurse Alyssa closes the door and steps toward the hallway. Just then, the door opens, and Mr. Peacher re-enters the infirmary holding some papers. Nurse Alyssa stands at the counter and looks at the papers with Mr. Peacher.

- 4:30:05: As Nurse Alyssa reads the papers, Mr. Peacher turns his back to her and steps toward the door.

- 4:30:11: Nurse Plasterer is visible through the window on the infirmary door. Mr. Peacher continues to stand next to the door. Nurse Plasterer peers through the window.

- 4:30:23: Nurse Alyssa realizes Nurse Plasterer is trying to enter the infirmary and steps around Mr. Peacher toward the door. Mr. Peacher takes one step away from the door. Nurse Plasterer pushes the door open, enters the infirmary, and holds the door open to allow two inmates in blue shirts to enter.

- 4:30:34. Mr. Peacher collects his papers and converses with Nurse Plasterer as they both leave the infirmary through the door.

This incident occurred on June 11, 2020. The next day, Nurse Plasterer wrote a conduct report charging Mr. Peacher with interfering with a staff member in violation of Code 252. Dkt. 9-1. Nurse Plasterer alleged that she tried to push the door open, but Mr. Peacher "used his foot to stop [the] door from opening." *Id.* Then, the report continues, Mr. Peacher laughed at Nurse Plasterer as she told him to open the door. *Id.*

Mr. Peacher does not deny that he held the door closed. He argues, however, that Nurse Plasterer was "playing" with him for before he held the door closed. To that end, Mr. Peacher made two requests when he received notice of his disciplinary charge. He wished to ask Nurse. Plasterer whether the conduct report was based on a "misunderstanding" because he was merely continuing their horseplay, and he wished to review security video of the infirmary for the five minutes leading up to the incident described in the conduct report. Dkt. 9-2.

Nurse Plasterer provided a written statement by e-mail. Dkt. 9-9. She denied that there was any misunderstanding and stated that Mr. Peacher "kept the door closed with his foot and was showing inappropriate magazines" to Nurse Alyssa. *Id.* She provided another statement that Mr. Peacher "was not letting" her "in the UCC door to assist Nurse Alyssa" and that he "used his foot to block the door." Dkt. 9-8.

Sergeant Cooke denied Mr. Peacher's request to watch the video for security reasons, but she watched the video herself and provided him with a written summary. Dkt. 9-7. Initially, Sergeant Cooke began her review at 4:29:55, just before Nurse Plasterer appeared at the infirmary door. *Id.* at 3. When Mr. Peacher received the summary, he responded in writing that he wished to review video of the five minutes leading up to that portion of the incident. Dkt. 9-3. Sergeant Cooke then watched and summarized the video beginning at 4:20:57. dkt. 9-7 at 1–2. Sergeant Cooke's summary is not materially different from the Court's summary above.

ISR 20-06-0071 proceeded to a hearing on July 7, 2020. Dkt. 9-5. Mr. Peacher submitted a written statement in his defense. Dkt. 9-6. He asserted that Nurse Plasterer "played" with him for several minutes before she left the infirmary, that he was simply continuing their horseplay when he blocked the door, and that his conduct therefore did not interfere with Nurse Plasterer or any other staff member. *Id.*

Sergeant Cooke considered Mr. Peacher's statement but found him guilty and assessed sanctions, including the loss of 30 days' earned credit time. Dkt. 9-5. She noted that the video showed—and Mr. Peacher even admitted—that he held the door closed. *Id.* She also addressed and dismissed his horseplay defense: "No, he can <u>NOT</u> be playful w/ staff by refusing enterance [*sic*]." *Id.*

Mr. Peacher's administrative appeals were denied. Dkts. 9-11, 9-12.

### IV. Analysis

Mr. Peacher asserts numerous challenges to his disciplinary conviction. The evidentiary record reveals, however, that there is no basis for habeas corpus relief.

### A.    Impartial Decision-Maker

Mr. Peacher argues principally that Sergeant Cooke was biased against him and that he was therefore deprived of his right to a hearing before an impartial decision-maker. "'[T]he constitutional standard for impermissible bias is high,' . . . and an adjudicator is entitled to a presumption of 'honesty and integrity' absent clear evidence to the contrary." *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003)). The presumption is overcome—and the right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie*, 342 F.3d at 667.

First and foremost, Mr. Peacher argues that Sergeant Cooke could not have heard his case impartially because she presided over previous disciplinary cases—including some on which Mr. Peacher was granted habeas relief in this Court. He adds that the prison staff even directed that she not preside over his disciplinary proceedings and that he has sued her in separate lawsuits.

These argument fail as a matter of law. Hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding." *Id.* at 666. Likewise, a hearing officer is not impermissibly biased just because the petitioner has sued her in a separate action. *See Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983).

Instead, bias must be "decided on a case-by-case basis" *id.*, and Mr. Peacher has presented no meaningful evidence of bias in this case. He argues that Sergeant Cooke found him guilty "[d]espite evidence showing [he] was not guilty." Dkt. 2 at 3. Mr. Peacher also asserts that Sergeant Cooke indicated during their hearing that she intended to find him guilty of a lesser offense, then ultimately convicted him of the original charge. As discussed below, though, evidence supported Sergeant Cooke's decision. Due process entitled Mr. Peacher to an impartial hearing officer—not to a favorable ruling. Sergeant Cooke's finding of guilt does not in itself demonstrate personal involvement in the incident or the investigation thereof, nor does it signal any other circumstance that would overcome the presumption that she heard the case impartially.

**B.      Retaliation and Sufficiency of Evidence**

Mr. Peacher alleges that Sergeant Cooke "used the disciplinary hearing process as a means of retaliation against" him. Dkt. 2 at 4. But "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001) (citing *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 2001) ("[A]s long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent.").

Above, the Court considered whether Mr. Peacher's previous encounters and litigation with Sergeant Cooke evidenced partiality against him. It did not. Here, the Court considers whether Sergeant Cooke may have based her decision on retaliatory animus rather than sufficient evidence.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Code 252 prohibits "[i]nterfering with a staff member in the performance of his/her duties." Dkt. 9-13 at § 252. Security video shows that Mr. Peacher did exactly that: He stood in front of the infirmary door and prevented a nurse from entering with two patients. Mr. Peacher inarguably interfered with Nurse Plasterer's performance of her duties.

By focusing on his earlier, "playful" interactions with Nurse Plasterer, Mr. Peacher asked the hearing officer to find that his behavior was benign or justifiable. Such arguments are beyond

the scope of this Court's review. The Disciplinary Code requires only that an inmate interfere with a staff member—not that he do so maliciously or for a particular amount of time. "Some evidence" supports Sergeant Cooke's determination that Mr. Peacher violated Code 252. That is enough to satisfy due process, regardless of competing evidence or allegations of retaliatory motive.

**C.      Denial of Evidence**

Mr. Peacher argues that Sergeant Cooke mishandled his requests for evidence in two respects. First, he notes that Sergeant Cooke initially reviewed the video of him blocking the door but did not review the video from the previous several minutes as he requested. Second, Mr. Peacher asserts that he did not receive a copy of at least one of Nurse Plasterer's statements until after his hearing.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). As the petitioner, Mr. Peacher faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Mr. Peacher's video argument is a nonstarter. The record makes clear, and he concedes, that Sergeant Cooke thoroughly reviewed and considered all the video Mr. Peacher requested. *See* dkt. 9-7 at 1–2.

As to Nurse Plasterer's statements, neither was material or exculpatory, so the prison staff could not have denied Mr. Peacher due process by withholding them. Nurse Plasterer reiterated in her e-mail statement that Mr. Peacher "kept the door closed" and that there was "nothing new to say." Dkt. 9-9. She wrote in her other statement that Mr. Peacher did not let her in the door to assist Nurse Alyssa. Dkt. 9-8. This evidence does not undermine Mr. Peacher's disciplinary conviction or raise any possibility of a different result. To the contrary, the evidence *supports* Sergeant Cooke's decision.

Mr. Peacher asserts that, if he received Nurse Plasterer's statements before his hearing, he could have requested a statement from Nurse Alyssa that she did not need or expect any assistance from Nurse Plastererat the time he was blocking the door. *See* dkt. 14 at 13. As Mr. Peacher sees it, Nurse Alyssa was handling his needs without any assistance. But this argument is problematic for three reasons. First, due process only entitled Mr. Peacher to material, exculpatory evidence. Nurse Plasterer's statement was neither. The possibility that it may have led Mr. Peacher to other evidence does not demonstrate a due process violation. Second, whatever evidence Mr. Peacher would have requested from Nurse Alyssa would have been immaterial. Nurse Plasterer was working and trying to enter the infirmary with two patients, and Mr. Peacher prevented her from doing so. Regardless of Nurse Alyssa's needs at that particular moment, the record shows that Mr. Peacher interfered with nurse Plasterer's performance of her duties. Third, if Nurse Alyssa's testimony had been material and exculpatory, Mr. Peacher could have requested it with or without Nurse Plasterer's statement.

In sum, Mr. Peacher did not receive all the evidence he requested, but he was not deprived of any evidence that due process guaranteed him.

### D.    Advance Notice of Charge

Finally, Mr. Peacher argues that the prison staff violated his due process right to advance notice of his disciplinary charge. Due process requires that an inmate be given advance "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted).

The screening report Mr. Peacher received clearly notified him that he was charged with violating Code 252, and he does not dispute that he received a summary of the facts underlying the charge. Instead, he argues that he should have received notice of a lesser offense for which he was never charged or convicted.

According to Mr. Peacher, Sergeant Cooke stated during the hearing that she intended to find him guilty of violating Code 375, a lesser offense, then ultimately found him guilty of the original Code 252 charge. Mr. Peacher says the prison staff should have notified him of the Code 375 charge in advance and then kept it in place.

This suggestion finds no support from the law. The Court may not "add to the procedures required by *Wolff*." *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)). Mr. Peacher received constitutionally adequate notice that he was charged with violating Code 252 by preventing Nurse Plasterer from entering the infirmary. He was convicted of violating Code 252 by preventing Nurse Plasterer from entering the infirmary. The Court cannot grant him habeas relief because the prison staff failed to notify him of a separate offense of which he was never charged or convicted.

## V. Conclusion

Mr. Peacher's motion to correct mislabeled exhibits, dkt. [15], is **granted** insofar as the Court acknowledges Mr. Peacher's motion, and it is **denied** in all other respects. Mr. Peacher's petition for a writ of habeas corpus challenging disciplinary case ISR 20-06-0071 is **denied**, and this action is **dismissed with prejudice**.

**IT IS SO ORDERED.**


Date:   9/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

R. PEACHER
881627
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov